UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TATIANA NERONI; and FREDERICK J.
NERONI,

                              Plaintiffs,

        -against-                                    3:11-CV-1485 (LEK/DEP)

ALEXANDER GRANNIS; *et al*.,

                              Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

## I.     INTRODUCTION

This case involves a dispute over a the legality of a pond constructed on the property of

Plaintiffs Tatiana Neroni ("Mrs. Neroni")[1] and Frederick J. Neroni ("Mr. Neroni") (collectively,

"Plaintiffs" or "the Neronis").  See generally Dkt. No. 4 ("Amended Complaint").  Presently before

the Court are a Motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by a

number of New York State officials (collectively, "Defendants") requesting that the Court dismiss

Plaintiffs' Amended Complaint in its entirety and a Cross-Motion filed by Plaintiffs seeking to

supplement their Amended Complaint.  Dkt. Nos. 7 ("Motion"), 14 ("Cross-Motion").  For the

reasons that follow, the Court grants Defendants' Motion and denies Plaintiffs' Cross-Motion as

moot.

## II.    BACKGROUND

Plaintiffs' accounts of the factual allegations underlying this case in their various

submissions are lengthy and convoluted, with Plaintiffs' facts dating back to Mr. Neroni's days as a

_____

[1] Mr. Neroni is also counsel of record for Plaintiffs in this action.  Dkt.

student at Albany Law School in the early 1970s.  Given the extensive litigation history, the Court presumes the parties' familiarity with the relevant background and recounts Plaintiff's account here only to the extent necessary to resolve the instant Motions.  For a more complete statement of the facts, reference is made to the Amended Complaint.

Plaintiffs are married and own a summer house in Hamden, New York.  See Am. Compl. ¶¶ 1-2.  The Hamden property that they bought in 1999 is the subject of the instant litigation.  Id. ¶ 2. At some point between the time they purchased the property and the summer of 2001, Mr. Neroni constructed a pond behind the barn on their property.  Id. ¶ 4.  In the summer of 2001, two New York Department of Environmental Conservation ("DEC") officers, Mr. Young[2] and Defendant Fraine, visited the property and claimed that a protected stream was being disturbed.  Id. ¶ 5.  While Plaintiffs allege that the officers found evidence of no such disturbance and that the visit was generally pretextual and lacking in any basis, the officers issued criminal tickets against Mr. Neroni charging him with disturbance of the protected stream.  Id. ¶¶ 6-9.  The case against Mr. Neroni was eventually dismissed for failure to prosecute and because of insufficient evidence.  Id. ¶ 13. Plaintiffs allege that the ticketing and investigation were orchestrated by the DEC in retaliation for Mr. Neroni's refusal to allow "timbering conservation" on another property.  Id. ¶ 10.

On April 25, 2006, the DEC initiated an administrative proceeding against Mr. Neroni arising from the alleged disturbance of the river in 2001 based on a complaint from Defendant Fraine.  Id. ¶¶ 14, 16.  Plaintiffs allege numerous legal and factual issues marred the legitimacy and lawfulness of this proceeding.  See generally id.  On August 17, 2006, administrative law judge

_____

[2]  According to Plaintiff's Amended Complaint, Mr. Young has since passed away.  Compl. ¶ 5.

("ALJ") Molly McBride granted in part and denied in part DEC's motion for summary judgment. Id. ¶ 43.  After extensive administrative proceedings that Plaintiffs allege were hampered by repeated misfeasance and shady dealing by Defendants, on June 10, 2009, Defendant Grannis, former commissioner of the DEC, issued an order ("the 2009 Order") adopting the final hearing report of ALJ McBride.  Id. ¶ 75.   Plaintiffs subsequently "brought a timely Article 78 petition/declaratory judgment action in Delaware County Supreme Court."  Id. ¶ 76.

Defendant Grannis moved to transfer the case to the New York State Appellate Division, Third Judicial Department, and Plaintiffs cross-moved for summary judgment or, in the alternative, for severance of the declaratory judgment proceeding from the Article 78 proceeding.  Id. ¶ 78. Defendant Grannis's motion was granted, and Plaintiffs' cross-motion was denied.  Id. ¶ 79.  The case was therefore transferred to the Appellate Division, and Plaintiffs appealed the transfer.  Id. ¶ 80.  Both the appeal and the underlying Article 78/declaratory judgment action itself were ultimately dismissed for failure to prosecute.  Id. ¶ 81.

In April 2011, Defendant Martens brought an action to enforce the 2009 Order and included Mrs. Neroni as a necessary party.  Id. ¶ 82.  Plaintiffs filed numerous defenses and counterclaims. Id. ¶ 82.  Plaintiffs also alleged extensive improprieties by the judge assigned to their case, the Honorable Carl F. Becker, Acting New York State Supreme Court Justice.  Id. ¶¶ 86-107.  On November 17, 2011, Judge Becker granted Defendant Martens's motion for summary judgment, struck Plaintiffs' affirmative defenses on grounds of collateral estoppel and *res judicata* and ordered Mr. Neroni to pay $37,000.00 in penalties to the DEC.  Id. ¶ 107.  As of the filing of this action,

Plaintiffs had not appealed that decision.[3]  Id. ¶ 108.

Based on these and other facts, Plaintiffs seek assorted relief and state a number of ill-defined causes of action.  First, Plaintiffs seek declaratory judgment pursuant to 28 U.S.C. § 2201 on fifteen separate issues relating to the DEC investigation and the merits of the state court case.  Id. ¶ 151.  Next, Plaintiffs vaguely assert a wide range of claims arising under 42 U.S.C. § 1983 for violations of their rights under the First and Fourteenth Amendments.[4]  Id. ¶¶ 152-65.  Pursuant to these constitutional claims against Defendants Martens and Grannis, Plaintiffs seek: (1) monetary damages; (2) injunctive relief; (3) "costs, disbursements and attorney's fees under 42 U.S.C. [§] 1988"; and (3) "treble damages under New York State Judiciary Law 487."  Id. ¶ 166.  Plaintiffs

---

[3]  Plaintiffs make this representation in their Complaint; however, less than a week after commencing this action, Plaintiffs filed an appeal in the New York State Appellate Division, Third Judicial Department.  Dkt. No. 11-10.  The Court notes that Defendants have submitted a copy of this notice with their Motion.  Id.  Where both parties submit supplemental materials not contained in the pleadings, and those materials are not excluded by a court, the motion to dismiss "must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d); see also Rotter v. Leahy, 93 F. Supp. 2d 487, 493 (S.D.N.Y. 2000).  Here, the Court declines to consider the supplemental materials and convert the Motion.  Instead, the Court takes judicial notice of the appeal as "a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. CIV. P. 201(b)(2).

Additionally, as discussed in note 6 *infra*, Defendants raise arguments pertaining to the Court's subject-matter jurisdiction.  The Court therefore addresses these arguments using the standards applicable to a motion brought pursuant to Rule 12(b)(1).  And, as further noted in the recitation of the applicable legal standards, the Court may properly examine extrinsic documents in addressing a motion brought pursuant to Rule 12(b)(1) without triggering the conversion requirement of Rule 12(d).

Finally, the Court notes that the above analysis may ultimately prove academic in the instant case, as Plaintiffs' claims are subject to dismissal regardless of whether a state-court appeal is currently underway.

[4] Plaintiffs also make multiple references to Defendants' actions impinging on Plaintiffs' rights to "due process of law."

also seek monetary damages against Defendant Fraine for violating their constitutional rights.[5]  Id. ¶ 167.  Plaintiffs also assert that Defendant Lapinski violated their "due process rights" and their right "to be free of unreasonable infringement of the government upon [their] real property."  Id. ¶ 169.  Plaintiffs also make a claim "[u]nder supplemental jurisdiction" for "fraud against the court" against Defendant Lapinski.  Id. ¶ 170.

## III.   LEGAL STANDARDS[6]

### A. Motion to Dismiss[7]

---

[5]  Plaintiffs also make allegations against Defendant Fraine "[u]nder supplemental jurisdiction"; however, Plaintiffs do not (even if the Court were to construe their recitation of causes of action with utmost liberality) state a cause of action under state law against Defendant Fraine.  Id. ¶ 168.

[6]  Although Defendants assert that they are bringing this Motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, several of their arguments clearly pertain to the Court's subject-matter jurisdiction.  Therefore, the Court will set forth the standards under both Rule 12(b)(6) and Rule 12(b)(1) and address each argument under the applicable standard.

[7]  In their Motion, Defendants recite the well-established pleading standards applicable in the context of Rule 12(b)(6) motions set forth by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Defendants' Memorandum of law (Dkt. No. 7-11) ("Defendants' Mem.").  Inexplicably, Plaintiffs argue that this is the incorrect standard and that Iqbal was wrongly decided:

> Aschroft v. Iqbal, cited by Defendants, is a case with an extremely strong dissent pointing out both that the heightened pleading standard was not required, and that the majority of the Supreme Court made factual mistakes in arriving at its decision and demonstrated poor understanding of Rule 8(a)(2).

Plaintiffs' Memorandum of law (Dkt. No. 14-19) ("Plaintiffs' Mem.") at 3.  This argument, however, is misguided.

First, at several points during their discussion, Plaintiffs display a misunderstanding of the applicable case law by emphasizing a distinction between the pleading standard set forth in Rule 8 and the standard announced in Iqbal and Twombly.  Id. at 2-4.  These are not distinct pleading standards; rather, the Supreme Court offered its *interpretation* of Rule 8 in the two controlling cases.

Second, the Court notes that commentators have indeed criticized and expressed skepticism about the standard announced in Iqbal and Twombly.  See, e.g., Kevin M. Clermont & Stephen C. Yeazell, *Inventing Tests, Destabilizing Systems*, 95 IOWA L. REV. 821 (2010); Olatunde C.A. Johnson, *Beyond the Private Attorney General: Equality Directives in American Law*, 87 N.Y.U. L.

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Such a

determination "requires the reviewing court to draw on its judicial experience and common sense."

Iqbal, 556 U.S. at 679 (citation omitted).  A court must accept as true the factual allegations

contained in the complaint and draw all inferences in favor of the plaintiff.  See Allaire Corp. v.

Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule

12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is

plausible on its face."  Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Id. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard

Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (citing Twombly, 550 U.S. at

_____

REV. 1339, 1350 (2012) (discussing legislative interest in overturning Twombly and Iqbal to allow for greater private enforcement of civil rights statutes); Arthur R. Miller, From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure, 60 DUKE L. J. 1, 5 (2010); A. Benjamin Spencer, Plausibility Pleading, 49 B.C. L. REV. 431, 431-32 (2008 ) ("In a startling move by the U.S. Supreme Court, the seventy-year-old liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded)."); Jeffrey W. Stempel, Taking Cognitive Illiberalism Seriously: Judicial Humility, Aggregate Efficiency, and Acceptable Justice, 43 LOY. U. CHI. L. J. 627, 628 (2012) ("[The Court] rewrote the rules of pleading in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal in a manner that arguably turned Rule 12(b)(6) motions into bad applications of summary judgment.").  Nevertheless, there can be no question that Twombly and Iqbal are the law of the land, and neither the presence of an "extremely strong dissent" nor an extensive body of critical scholarship serves as a basis for the Court to flout binding Supreme Court precedent.  See Bracci v. Becker, No. 1:11-CV-1473, 2013 WL 123810, at *4 n.3 (N.D.N.Y. Jan. 9, 2013) (rejecting Plaintiffs' identical legal argument in another suit).

555).  Where a court is unable to infer more than the mere possibility of the alleged misconduct

based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the

action is subject to dismissal.  See Id. at 678-79.

In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)

of the Federal Rules of Civil Procedure, a court "must accept as true all material factual allegations

in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs."  J.S.

ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  A court "may consider

affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may

not rely on conclusory or hearsay statements contained in the affidavits."  Id.  "Furthermore,

'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it.'"  Gunst v. Seaga, No. 05 Civ. 2626, 2007

WL 1032265, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting Shipping Fin. Servs. Corp. v. Drakos, 140

F.3d 129, 131 (2d Cir. 1998)).

### B.  Motion to Supplement Complaint

Under Rule 15(d) of the Federal Rules of Civil Procedure, "[o]n motion and reasonable

notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any

transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

FED. R. CIV. P. 15(d).  "[A] Rule 15(d) motion may be appropriate when the movant seeks to add

new parties or claims arising from the new events."  Bracci v. Becker, No. 1:11-CV-1473, 2013 WL

123810, at *25 (N.D.N.Y. Jan. 9, 2013) (citing Griffin v. City Sch. Bd., 377 U.S. 218, 226 (1964)

("[I]t follows, of course, that persons participating in these new events may be added if necessary.

Such amendments are well within the basic aim of the rules to make pleadings a means to achieve

an orderly and fair administration of justice.") (alteration in original).

Further, "Rule 15(d) motions are evaluated by the court under the same standards used to evaluate motions to amend pleadings under Rule 15(a), with leave 'freely given when justice so requires.'" Id. at *26 (quoting N.Y. State Nat'l Org. for Women v. Cuomo, 182 F.R.D. 30, 36 (S.D.N.Y. 1998)). Rule 15 of the Federal Rules of Civil Procedure states that "a party may amend its pleading only with the opposing party's written consent or the court's leave[,] . . . [but that t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

## IV.   DISCUSSION

### A.  Defendants' Motion

In their Motion, Defendants argue that the Court should dismiss Plaintiffs' Amended Complaint because: (1) Plaintiffs' claims are barred by res judicata; (2) Plaintiffs' claims are barred by collateral estoppel; (3) this case interferes with an ongoing state proceeding and therefore the Court should exercise Younger abstention; (4) Plaintiffs are essentially appealing a state court judgment to the Court, making jurisdiction improper under the Rooker-Feldamn doctrine; (5) Defendant Fraine is immune from liability; and (6) Defendant Lapinski is immune from liability. The Court notes that Plaintiffs do not succeed in clearly stating individual causes of action, and Defendants likewise do not, for the most part, address individual claims in their Motion. In an effort to clarify what is otherwise an exceedingly muddled matter, the Court organizes its discussion

of Defendants' Motion on the basis of Plaintiffs' individual claims for relief/causes of action as opposed to by legal theories.

### 1. Request for Declaratory Judgment

The Court concludes that Plaintiffs' requests for declaratory relief under 28 U.S.C. § 2201 are not properly before the Court, as they are merely a re-hashing of the same issues raised by Plaintiffs in their state-court proceedings and ask the Court to sit in appellate posture to a state-court judgment. Accordingly, the Court holds that these requests are properly barred under the <u>Rooker-Feldman</u> and <u>Younger</u> doctrines.[8]

### a.  Legal Standards

The <u>Rooker–Feldman</u> doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobile Corp. v. Saudi Basic Indus.</u>, 544 U.S. 280, 284 (2005). The doctrine "provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." <u>Hachamovitch v. DeBuono</u>, 159 F.3d 687, 693 (2d Cir. 1998) (citation omitted). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." <u>Id.</u>

"[T]here are four 'requirements' that must be met before the <u>Rooker-Feldman</u> doctrine applies." <u>Green v. Mattingly</u>, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted).

---

[8] In the interests of judicial economy, because the Court concludes that either <u>Younger</u> abstention or the <u>Rooker-Feldman</u> doctrine bar Plaintiffs' requests for declaratory judgments, the Court does not analyze these claims under the framework of ordinary preclusion law. Nevertheless, the Court notes that—depending on the status of the state-court appeal—ordinary preclusion law principles most likely also stand in the way of these claims.

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]"  Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]."  Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., <u>Rooker-Feldman</u> has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

<u>Green</u>, 585 F.3d at 101 (quoting <u>Hoblock v. Albany Cnty. Bd. of Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005)).  .  Applying these factors, a

> federal suit is therefore barred by <u>Rooker-Feldman</u> only if it complains of injury from the state-court judgment and seeks review and rejection of that judgment, but not if it raises "some independent claim." . . . .
> > Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from <u>Rooker-Feldman</u> if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed.

<u>Hoblock</u>, 422 F.3d at 86.  Under this analytical framework, "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been 'caused by' those proceedings."  <u>McKithen v. Brown</u>, 481 F.3d 89, 98 (2d Cir. 2007).

The doctrine of <u>Younger</u> abstention, like the <u>Rooker-Feldman</u> doctrine, has been crafted by the Supreme Court to preserve the interests of comity and the buttress federalism's hallowed place in the U.S. judicial system.  <u>See generally</u> <u>Younger v. Harris</u>, 401 U.S. 37 (1971).  Under <u>Younger</u>, federal courts must abstain from enjoining pending civil suits and "allow state courts to resolve pending matters within their jurisdiction."  <u>Washington v. County of Rockland</u>, 373 F.3d 310, 318 (2d Cir. 2004).

"<u>Younger</u> abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims."  <u>Spargo v. N.Y.</u>

10

State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003).  Further, "if a court finds that abstention is proper, it may dismiss the case, or otherwise, stay the proceedings pending a resolution of the state court action."  Kunz v. N.Y. State Comm'n on Judicial Conduct, 356 F. Supp. 2d 188, 193 (N.D.N.Y. 2005); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197 (2d Cir. 2002).

In this case, because of a lack of factual clarity in the submissions, it is not entirely clear whether Younger or Rooker-Feldman is the abstention doctrine that provides the jurisdictional bar to Plaintiffs' request for declaratory judgments.  Plaintiffs have stated in their Amended Complaint that they have not filed an appeal of their state-court judgment, whereas Defendants suggest that Plaintiffs have filed an appeal in the period between filing their initial Complaint and seeking to amend it.  However, in either factual situation, an abstention doctrine directs the Court to dismiss these claims on jurisdictional grounds.  In an abundance of caution, the Court addresses this issue under both doctrinal frameworks.

### b.  The Rooker-Feldman Doctrine

First, assuming that a state-court appeal is not underway (as Plaintiffs represent in their Complaint), Plaintiffs' request for declaratory judgments is barred by the Rooker-Feldman doctrine. While the Supreme Court has carefully narrowed the scope of the Rooker-Feldman doctrine, the Court concludes that Plaintiffs fall in the clearly-delineated category of "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobile Corp., 544 U.S. at 284.

In this case, there is no question that Plaintiffs lost in DEC's state-court action against them

when Judge Becker entered judgment against them on November 17, 2011.  Am. Compl. ¶ 107.

The Complaint in the instant motion was filed on December 19, 2011, so the state-court judgment

was also rendered prior to the commencement of the federal action.[9]  Dkt. No. 1 ("Complaint").

Further, in their requests for fifteen separate declaratory judgments, Plaintiffs launch a collateral

attack on the state-court judgment.  This cause of action is little more than a thinly-veiled stealth

appeal in which Plaintiffs request declarations of law on each legal holding in the state-court matter

along with judgments that such state-court proceedings were constitutionally defective.  See

generally Am. Compl. ¶ 157.

      The Court is mindful of the Second Circuit's admonition that "the Rooker-Feldman doctrine

turns not on the similarity between a party's state-court and federal-court claims (which is, generally

speaking, the focus of ordinary preclusion law), but rather on the causal relationship between the

state-court judgment and the injury of which the party complains in federal court."[10]  McKithen v.

Brown, 481 F.3d 89, 97-98 (2d Cir. 2007); see also Hoblock, 422 F.3d at 87 ("[A] plaintiff who

seeks in federal court a result opposed to the one he achieved in state court does not, for that reason

alone, run afoul of Rooker-Feldman.").  However, while Plaintiffs seeks to frame their current

action in terms of constitutional violations and various claims not before the state court, the Court

cannot overlook the plain fact that their Amended Complaint consists of an array of reasons why

they should not have to pay a penalty to the DEC.

      Plaintiffs essentially complain (if their vague and disparate allegations can be fairly distilled)

---

[9] As noted *supra* and *infra*, this conclusion would be upset by a finding that Plaintiffs had appealed the state-court judgment.  See Hoblock, 422 F.3d at 81 ("Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.").

[10] See *supra* note 8.

12

that they have suffered financial and personal hardship as result of the agency's and subsequently the state court's conclusion regarding the authenticity of maps used by the DEC and the validity of the DEC investigation.  See generally Am. Compl.  Insofar as they seek determinations from the Court that the investigation was invalid, Plaintiffs are asking the Court to review and reject the state court's decision.  The claims involving Judge Becker and the legitimacy of the state-court process are simply asserted as a way of explaining the state court decisions that Plaintiffs now ask the Court to review and reject.  Thus, Plaintiffs ask the Court to review, under the guise of a constitutional due process claim, the judgments rendered in state court from which their complained-of injury directly flows.  See Hoblock, 422 F.3d at 88 ("in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments.").

The injury Plaintiffs complain of is actually one caused by the state court's judgment to validate DEC's investigation and assess a penalty against Plaintiffs.  Therefore, the second and third requirements for the application of the Rooker-Feldman doctrine are also present.  "Since Plaintiffs' claim is inextricably intertwined with the state-court proceeding, the Court finds that it is barred by the Rooker-Feldman doctrine."  Bracci, 2013 WL 123810, at *17 (quoting Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 167. (E.D.N.Y. 2010)).

### c.  The Younger Abstention Doctrine

Because there is some uncertainty based on the record currently before the Court as to whether Plaintiffs' state-law case is currently pending, the Court also addresses the requests for declaratory relief under the Younger framework.  As a preliminary matter, the Court notes that Plaintiffs, citing broadly to Marbury v. Madison, 5 U.S. 137 (1803), contend that Younger is unconstitutional.  The Court finds this line of reasoning to be wholly unavailing for the reasons set

forth in response to the same argument by the same parties in <u>Bracci</u>:

> Plaintiffs primarily argue that the <u>Younger</u> abstention doctrine is unconstitutional and therefore void under Chief Justice Marshall's seminal decision in <u>Marbury</u>. . . . Although <u>Marbury</u> does establish judicial review, and that unconstitutional laws may be struck down by the courts, <u>Marbury</u> does not aid Plaintiffs in their substantive argument. <u>Marbury</u> provides this Court with the power to find a law unconstitutional, but it does not provide the Court with the ability or a reason to find the <u>Younger</u> abstention doctrine unconstitutional, which . . . is binding Supreme Court precedent that this Court is required to follow.

2013 WL 123810, at *19.  Therefore, the Court turns to the substantive application of the <u>Younger</u> abstention doctrine and examines whether Plaintiffs' claims for declaratory relief are barred under the doctrine's three requirements: that there is (1) a pending state proceeding, (2) that implicates an important state interest, and (3) that "affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." <u>Spargo</u>, 351 F.3d at 75.

If, as Defendants contend and as public records indicate, Plaintiffs have indeed filed an appeal of the state-court decision, the first <u>Younger</u> requirement is met.  However, even if such an appeal has been abandoned or since denied, "[a] Court may abstain under the principles of comity and federalism when, even though the <u>Younger</u> requirement that there be an ongoing state proceeding is not met, 'the equitable relief sought would inappropriately require the federal court to supervise institutions central to the state's sovereignty.'" <u>Kunz</u>, 356 F. Supp. 2d at 194 (quoting <u>Miller v. Silbermann</u>, 951 F.Supp. 485, 491 (S.D.N.Y. 1997)).

The Court concludes that in this case, the relief sought would "inappropriately require the federal court to supervise institutions central to the state's sovereignty" and therefore clearly satisfies the second <u>Younger</u> requirement.  Here, "Plaintiffs are improperly attempting to collaterally attack the decision of a state court.  The remedy available to Plaintiffs . . . was to appeal to the Appellate Division." <u>Bracci</u>, 2013 WL 123810, at *20 (citation omitted).  "[F]ew interests can be

considered more central than a state's interest in regulating its own judicial system." Spargo, 351 F.3d at 75; see also Landmark Commc'ns. Inc. v. Virginia, 435 U.S. 829, 848 (1978) (Stewart, J., concurring) ("There could hardly be a higher governmental interest than a State's interest in the quality of its judiciary."); Bracci, 2013 WL 123810, at *20.

Finally, on the third prong of the Younger analysis, "the burden of proof is on the plaintiff to 'demonstrate that state law bars the effective consideration of their constitutional claims.'" Bracci, 2013 WL 123810, at *21 (quoting Spargo, 351 F.3d at 78); see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) ("[A] federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" (quoting Moore v. Sims, 442 U.S. 415, 426 (1979))).  In this case, the Court concludes that Plaintiffs have not met this burden and have failed to demonstrate that their vague "due process" challenges to the state-court proceedings cannot be raised on appeal and, indeed, are not the *very issues* being raised on appeal. Therefore, the Court finds that Younger abstention bars the consideration of the requests for declaratory judgments.

### 2. Section 1983 Claims

As pleaded, Plaintiffs' § 1983 claims are vague, sprawling castigations of the DEC for harboring personal and political grudges against the Neronis.  Indeed, it is not entirely clear where allegations against one individual end and allegations against another begin, or—for that matter—where Plaintiffs attempt to assert § 1983 claims and where they attempt to assert state-law causes of action.[11]  For the following reasons, the Court grants Defendants' Motion to dismiss the §

---

[11]  The Court notes that the Amended Complaint contains two general categories of causes of action—one for declaratory judgments under 28 U.S.C. § 2201 (discussed *supra*) and one for damages under § 1983.  See Am. Compl. ¶¶ 151-70.  In the latter section, however, Plaintiffs also include references to causes of action arising "under supplemental jurisdiction."  See, e.g., id.

1983 claims in their entirety.

As a general matter, "[t]o state a claim under Section 1983, a plaintiff must show: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation, [and]; (4) damages .'" Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008)).

### a. Defendant Grannis

Plaintiffs first assert that Defendant Grannis, in his former position as commissioner of DEC,

> has instituted a politically motivated, legally insufficient action in the Supreme Court against [Plaintiffs] in retribution for their conduct protected by the [First] Amendment of the United States Constitution for revealing in a public record in administrative and prior court proceedings that the regulatory sceme of [DEC] against upstate New York landowner[s] is void and unenforceable where protected streams are concerned, because the maps utilized by DEC are ancient and obsolete, blind and unreadable, were not created by NYS DEC or by any other agency for the purpose they were used for, location of protected environmental objects, and cannot be tied to any addresses of properties.

Am. Compl. ¶ 154.  Plaintiffs go on to assert that this is a "highly political" issue in their region and frame the state-court action as a retaliation against whistleblowers who have sought to lay bare governmental corruption and bureaucratic abuses.  Id. ¶¶ 155-56.

To establish a claim of retaliation for the exercise of a constitutional right, a plaintiff must show that: (1) she engaged in protected conduct; (2) an adverse action was taken against her; and (3) that there is a causal connection between the protected conduct and the adverse action.  See, e.g., Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004).  The Second Circuit has defined adverse action as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness

---

¶¶ 168, 170.

from exercising . . . constitutional rights.'" Id. at 381 (citations omitted).

Much of Plaintiffs' claim against Defendant Grannis sounds in the same realm as their requests for declaratory relief.  Once again, they harp on the merits of the state-court judgment, apparently seeking to re-litigate the validity of the punishment imposed against them as a result of the DEC investigation.  To this extent, such a claim is barred for all the reasons discussed *supra* in the context of the requests for declaratory relief.  See *supra* Part IV.A.1.  To the extent that Plaintiffs address Defendant Grannis's impetus for commencing the investigation and suit in the first place, the Court concludes that Plaintiffs' claim—at least as pleaded—is deficient and subject to dismissal.

Following a thorough review of the Amended Complaint and Plaintiffs' Motion, the Court is unable to discern any allegation that Plaintiffs took part in constitutionally protected activity that took place *prior* to the commencement of the investigation and subsequent state-court suit. Plaintiffs refer to any number of factors that might have motivated both official hostility to and the DEC's investigation of the Neronis, ranging from personal animosity to professional jealousy, that would certainly be unsettling if not outright despicable if true.  See generally Am. Compl.; Cross-Motion   That an agency or state actor has placed personal grudges ahead of professional judgments, however, in no way entails that an individual who is the target of regulators run amok has engaged in constitutionally protected activity.  Indeed, Plaintiffs specifically allege that the investigation and ticketing that set off years of sporadic litigation was undertaken as retaliation for Mr. Neroni's refusal to allow "timbering conservation" on another property.  Am. Compl. ¶ 10.  The Court is unaware of any authority—and Plaintiffs have provided none—that might support the contention that Mr. Neroni's past negotiations over an easement amount to conduct protected by the First

Amendment for the purposes of a later retaliation claim.

Even if Plaintiffs' legal arguments regarding the quality of the DEC's maps and the nature of DEC's investigative procedures might possibly have constituted protected speech under the First Amendment, the Court finds nothing in Plaintiffs' pleadings to suggest that any of this speech *predated* the administrative and legal actions in the state agency and state court. The facts alleged do not support a claim that any regulatory enforcement action was commenced in retaliation for protected conduct;[12] rather, even granting Plaintiffs' pleadings a liberal construction, Plaintiffs assert that in the course of their ongoing legal battle with DEC, Plaintiffs have served as whistleblowers. The chronology and chain of causation underlying this argument are fatally flawed. Therefore, the Court concludes that Plaintiffs have failed to make out the necessary elements of a retaliation claim under the First Amendment. Defendants' Motion to dismiss the § 1983 claim against Defendant Grannis is granted. However, in the interests of justice and mindful of the Supreme Court's declaration that leave to amend should be "freely given," the Court grants Plaintiffs leave to amend this claim. Foman, 371 U.S. at 182.

### b. Defendant Martens

The substance of the § 1983 claim against Defendant Martens is similarly difficult to discern. First, in the section of the Amended Complaint that purports to lay out the causes of action, Plaintiffs state:

> Upon information and belief and upon research of scientific literature, Plaintiffs believe that the actions of Defendant MARTENS' agency contribute to flooding of Delaware County and upstate New York as a whole, by hindering local efforts to clean the streams and making those efforts prohibitively expensive, or by directing installation, without

---

[12] Once again, the Court notes that such a claim is directly contradicted by Plaintiffs' statement earlier in the Amended Complaint that they faced regulatory penalties and suits because of hostility over a prior land transaction. Am. Compl. ¶ 10

proper scientific basis and based on "recommendations" of unqualified DEC personnel, of stone stream channels that accelerate the flow of water, prevent the water from naturally seeping into the soil of the banks and exacerbate damage caused by raging waters during floods.

Upon information and belief, Defendant MARTENS' and his staffs conduct in bringing legally unsubstantiated actions against FREDERICK J. NERONI and TATIANA NERONI is an action meant to intimidate people who have legal knowledge and financial ability to point out legal insufficiencies of DEC' statutory and regulatory scheme, and to establish legal precedent that will block the rights of all upstate New York landowners to contest the outdated and blind maps used by DEC to claim permit fees, civil penalties and criminal fines

Am. Compl. ¶¶ 158-59.  Such broad-sweeping accusations against the DEC for wreaking havoc on the ecosystems of upstate New York do not find support or elaboration in other portions of the Amended Complaint.  See generally Am. Compl.  The claims that follow are conclusory, wildly speculative, and legally deficient.

Plaintiffs contend that Defendant Martens and his agency have taken legal action against Plaintiffs as a way to spearhead a systematic silencing of affluent citizens with legal training in order to consolidate power in upstate New York and cement the legitimacy of abusive DEC actions against other citizens.  Certainly this is a troubling allegation, but it also comes out of left field 165 paragraphs into the Amended Complaint.  Further, Plaintiffs in no way tie this allegation to any particular constitutional right or anchor it in any facts alleged.

Plaintiffs further allege that

Commissioner MARTENS has failed to put in place policies that would train and inform his staff of landowner's constitutional rights under due process of law and 4th Amendment, and failed to put in place policies preventing selective and retributive enforcement of law and enforcement of law without probable cause or legal basis as to the specific property, and Plaintiffs suffered damages when Commissioner MARTENS, an attorney, and his staff, violated Plaintiffs' due process of law in commencing and prosecuting an action based on false evidence, and his staff unlawfully commenced an action, brought by a disqualified attorney before a disqualified judge, and continued to prosecute it with full knowledge of disqualification on both sides and utilizing the situation that the judge disfavors Plaintiffs and favors his own counsel.

19

Am. Compl. ¶ 165.  As already discussed at length *supra*, this claim operates as yet another attempt to attack collaterally the state-court judgment.  It would be impossible for the Court to rule on such a claim in Plaintiffs' favor without sitting in an appellate posture to the state court and overturning rulings that are now either settled or under proper state-court review (depending, of course, on the continuing accuracy of Plaintiffs' statements about the status of an appeal).  Therefore, this claim is dismissed for the reasons laid out in the discussion of the requests for declaratory judgments.  See *supra* Part IV.A.1.

c.  Defendant Fraine

Plaintiffs allege that Defendant Fraine made false statements, brought false proceedings against Plaintiffs, and submitted false affidavits to the state court and ALJ McBride and, in so doing, violated Plaintiffs' constitutional rights.  Am. Compl. ¶ 167.  Defendants contend that Defendant Fraine is immune from liability due to his status as a witness at prior proceedings and that any claims against him relating to the initial ticketing that led to the initiation of charges against Mr. Neroni are barred by the statute of limitations.  Def.'s Mem. at 18-19.

Taking Defendants' second argument first, the Court concludes that Plaintiffs' § 1983 claims against Defendant Fraine relating to the initial ticketing are barred by the applicable statute of limitations.  In New York, the three-year statute of limitations applicable to personal injury actions also applies to § 1983 claims and runs from the date a plaintiff had reason to know of her injury. See, e.g., Connolly v. McCall, 254 F.3d 36, 40 (2d Cir. 2001); Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995); Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980).  Here, the ticketing occurred in 2001, five years before the DEC even commenced its administrative enforcement action.  Am. Compl. ¶¶ 10, 17. Plaintiffs did not file their Complaint in this action until

2011.  Dkt. No. 1.  Therefore, any claims arising from this 2001 incident are clearly time-barred.

The Court concludes that Defendant Fraine is also shielded by absolute immunity as an official witness for any allegedly false statements and affidavits submitted in prior judicial proceedings.  See Sykes v. James, 13 F.3d 515, 519-20 (2d Cir. 1993).  In holding that absolute immunity shields the testimony of official witnesses, the Second Circuit emphasized that such a rule is in accordance with Supreme Court precedent and that  "considerations of public policy support absolute immunity for official witnesses in section 1983 cases: subjecting such witnesses to damage actions would invite frequent litigation, with concomitant distraction from official duties."  Id. at 520 (citing Briscoe v. LaHue, 460 U.S. 325, 343 (1983)).  The Court therefore concludes that Defendant Fraine is shielded from liability for statements and affidavits made pursuant to his involvement in the DEC investigation of Plaintiffs.  Accordingly, the Court grants Defendants' Motion to dismiss the claims against Defendant Fraine.

### d.  Defendant Lapinski

Plaintiffs allege that Defendant Lapinski in her role as an attorney for DEC verified a false complaint for the DEC action, stalled discovery, and used a defective New York Department of Transportation map to establish liability.  Am. Compl. ¶¶ 169-70.  Defendants contend that Defendant Lapinski is shielded by absolute immunity based on her prosecutorial role.  Def.'s Mem. At 19-21.

As a preliminary matter, Plaintiffs have conceded that Defendant Fraine and not Defendant Lapinski verified the complaint.  Cross-Mot. at 24.  The Court concludes that Plaintiffs' other claims against Defendant Lapinski are deficient as a matter of law.

Prosecutors are protected by absolute immunity when performing certain of their

responsibilities, but only qualified immunity when performing other tasks.  See, e.g., Burns v. Reed, 500 U.S. 478 (1991) (holding that a prosecutor was protected by absolute immunity for preparing and arguing a warrant application, but not for providing legal advice to investigating police officers).  Thus, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate of the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  However, "absolute immunity may not apply when a prosecutor is . . . instead engaged in other tasks, say, investigative or administrative tasks."  Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009) (citing Imbler v. Pachtman, 424 U.S. 409, 431 n.33 (1976)).

Prosecutorial immunity can extend to agency attorneys who act as prosecutors, conducting a trial and presenting evidence.  Butz v. Economou, 438 U.S. 478 (1978); Rodow v. City of New York, 822 F.2d 324, 327 (2d Cir. 1987).  Absolute immunity may apply to officials of government agencies "performing certain functions analogous to those of a prosecutor."  Butz, 438 U.S. at 515. The Second Circuit has adopted a "functional approach" to determine whether actions taken by agency officials are entitled to absolute immunity.  DiBlasio v. Novello, 344 F.3d 292, 297 (2d Cir. 2003); see also Applewhite v. Briber, 506 F.3d 181 (2d Cir. 2007).  Under this approach, a court must consider the extent to which the relevant administrative proceedings share "characteristics of the judicial process," and whether the defendant official was functioning in a manner sufficiently analogous to that of a judge or prosecutor.  DiBlasio, 344 F.3d at 297-98.

In evaluating the process, courts assess the following six factors:[13]

---

[13] The Court notes that this multi-factor analysis has been applied in assessing absolute judicial immunity.  However, given the overlap in Second Circuit case law regarding judicial and prosecutorial immunity in the administrative context, the Court observes that similar factors are applicable to either inquiry.

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Id. at 298 (quoting Cleavinger v. Saxner, 474 U.S. 193 (1985)).  With respect to the official's actions, courts in this circuit "look to whether [those] actions . . . are 'functionally comparable' to that of a judge or a prosecutor."  Id. at 297 (quoting Butz, 438 U.S. at 513).

In this case, the Court is unable at this stage to determine if Defendant Lapinski is shielded by absolute immunity.  Absent a better developed record on the nature of the DEC decision-making process and of Defendant Lapinski's role, the Court cannot decide the issue of absolute immunity.[14] The Court instead looks at the merits of Plaintiffs' claims against her and determines that these claims must be dismissed as legally deficient.

First, the Court finds no legal or factual basis to determine that the alleged "stalling [of] discovery" amounts to behavior that deprived Plaintiffs of their constitutional rights and might subject Defendant Lapinski to liability under § 1983.  The reference to "stalling discovery" is wholly conclusory and unsupported by other facts in the Amended Complaint.  There is no relationship drawn between any such stalling and the "violation of [Plaintiffs'] due process rights." Am. Compl. ¶ 168.  Therefore, this claim is dismissed.

Second, any claims relating to the map are also dismissed for the reasons discussed *supra* in the context of the requests for declaratory relief.  This is yet another instance of Plaintiffs seeking

---

[14] See DiBlasio v. Novello, 344 F.3d 292, 296 (2d Cir. 2003) ("'The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties,' and hence courts are generally 'quite sparing' in their recognition of absolute immunity." (quoting Burns v. Reed, 500 U.S. 478, 486-87 (1991))).

further review of the state and administrative determinations regarding the validity of the DEC investigation and punishment.

<u>e.  State Law Claims</u>

So long as a district court's original jurisdiction was not founded solely on diversity of citizenship, "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  A district court may retain pendent jurisdiction over state law claims whenever the state law claim(s) and the federal claim(s) (through which original subject matter jurisdiction was obtained), "derive from a common nucleus of operative fact."  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966).

"Pendent jurisdiction is 'a doctrine of discretion' for the district court."  <u>Raucci v. Town of Rotterdam</u>, 902 F.2d 1050, 1054 (2d Cir.1990) (quoting <u>Gibbs</u>, 383 U.S. at 726).  "[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."  <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988).  "Failure to dismiss a pendent claim after dismissing a federal claim 'may be an abuse of the district court's discretion' especially when the state claim involves novel questions of state law."  <u>Raucci</u>, 902 F.2d at 1054 (quoting <u>Robison v. Via</u>, 821 F.2d 913, 925 (2d Cir. 1987)).  However, the dismissal of pendent state claims following the dismissal of the federal claims in an action is not always required.  <u>Id.</u> at 1055 (citing <u>Cohill</u>, 484 U.S. at 350).  In making this discretionary determination, a court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction."  <u>Cohill</u>, 484 U.S. at 350.

Further, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. at 350 n.7.

Because the Court dismisses all the federal claims in this case, the Court declines to exercise jurisdiction over any state-law claims.

### B.  Plaintiffs' Cross-Motion

Along with their Motion to supplement their Amended Complaint, Plaintiffs offer a Proposed Supplemental Complaint.  Dkt. No. 14-10 ("Proposed Supplemental Complaint"). Mindful that leave to supplement should be granted "freely given when justice so requires," N.Y. State Nat'l Org. for Women, 182 F.R.D. at 36, the Court denies Plaintiffs' Motion to supplement their Amended Complaint because: (1) the proposed supplementation would be futile; and (2) the Motion is improperly brought as a matter of law.

In the Proposed Supplemental Complaint, Plaintiffs seek to add as new Defendants: (1) Jonathan Lippman, in his official capacity as Chief Judge of the State of New York; (2) Thomas DiNapoli in his official capacity as New York State Comptroller; (3) Carl F. Becker, in his official capacity as Acting Supreme Court Justice, State of New York, Delaware County; (4) Eric T. Schneiderman, in his official capacity as New York Attorney General and in his individual capacity; (5) Andrew Cuomo, in his official capacity as former New York State Attorney General, and in his individual capacity; (6) Lawrence Rappaport, in his official capacity as Assistant New York State Attorney General and in his individual capacity; and (7) Christopher Hall, in his official capacity as Assistant New York State Attorney General and in his individual capacity.  Id. at 1-2.

Plaintiffs also assert two additional causes of action.  For their first supplemental cause of

action, Plaintiffs claim that New York Executive Laws, Article Five, §§ 63, 63A-D are unconstitutional on their face and as applied to Plaintiffs because they create conflicting incentives for the Office of the Attorney General.  Id. ¶¶ 53-59.  Plaintiffs contend that these statutes forge a legal regime that reeks of anti-democratic and corruptly self-serving governance, creating a policy space defined by deeply ingrained conflicts of interest.  See generally id.  Because the Attorney General is supposed to serve the public interest and protect New York's citizens, Plaintiffs argue that there is something inherently wrong with a system where that same office is also tasked with defending public officials charged with corruption or with failing to protect or serve the public interest.  See generally id.  As a result, Plaintiffs ask that the Court "declare all court orders that arose out of such conflicted representation by New York State Attorney General as void, and to declare New York State statutory scheme mandating such conflicted representation by New York State Attorney General unconstitutional, on its face and as applied to Plaintiffs."  Id. ¶ 59.

Plaintiffs next assert two different causes of action—both of them class actions—as the "second cause of action."  Id. ¶¶ 60-109.  The first is essentially a restatement of the prior cause of action, but asserts that Plaintiffs are representative of a broader class of individuals who have suffered undesirable legal outcomes as a result.  Id. ¶¶ 60-81.  The second "second cause of action" provides yet another version of Plaintiffs' argument that the maps being used by the DEC are improper.  Id. ¶¶ 82-117.  Plaintiffs purport to speak on behalf of a class of individuals who have been injured by the use of deficient maps.  Id.  Further, nestled in amongst the class claims that make up this second "second cause of action" are a number of claims against Judge Becker relating to his alleged prejudice against Plaintiffs and his allegedly unethical and unlawful behavior in handling Plaintiffs' state-law case.  Id. ¶¶ 115-24.  Plaintiffs further claim that these conspiratorial

activities based on both Judge Becker's alleged corruption and the alleged DEC actions based on the defective map form the basis of claims under both the Racketeer Influenced and Corrupt Organizations Act ("RICO") and 42 U.S.C. § 1985.

As to Plaintiffs' first proposed supplemental cause of action, the Court finds no constitutional or legal basis for this claim. From a policy perspective, it may be that there is something unsettling about a legal regime in which the same actors are tasked with both protecting citizens from public and private exploitation and also defending public officials accused of corruption or of harming private citizens. That this elision of the roles and offices of—in a certain sense—public defender and public advocate might raise questions about conflicts of interest, impartiality, or the use of taxpayer dollars, says nothing about its constitutionality. Plaintiffs' Motion and Proposed Supplemental Complaint are completely bereft of any legal or factual basis for a claim that this regime somehow constitutes unconstitutional legislative action.

Ultimately, then, like much of their Amended Complaint, Plaintiffs' claim here amounts to a *complaint*, not in the legal sense explicated by Rule 8 and the Twombly and Iqbal opinions, but in the vernacular sense. Plaintiffs have identified an aspect of New York State's governance that they find objectionable. They have, however, failed to provide the Court with any reason to think that it would be either entitled or required to intervene in this particular structure of governance. Absent such a basis for judicial intervention in legislative or executive action, it would appear that Plaintiffs avenue for redress is electoral rather than judicial.

Additionally, there is nothing about this claim that is "new" or that suggests that the basis for it has arisen since the filing of Plaintiffs' original Complaint or their Amended Complaint. Indeed, the statutes in question predate the instant matter, and Plaintiffs' claim asserted here is that the

statutory scheme that existed *prior* to the commencement of federal or state-court actions was unconstitutional.  As a result, this claim, even if it were not futile (which the Court concludes that it is) would not be brought properly as a part of a motion to supplement.  See Marcucci v. N.Y. Dist. Council of Carpenters Welfare Fund, No. 97 Civ. 7406, 2001 WL 1622213, *2 n. 3 (S.D.N.Y. Dec. 17, 2001).

Plaintiffs' class-action claims are similarly lacking in legal merit as well as being improperly brought.  As a preliminary matter, both claims—like the first cause of action—clearly relate to events that predated the filing of the Amended Complaint and are therefore not properly the content of a supplemental complaint.  Id.

Moving beyond this initial bar, the Court notes that these two claims are also legally deficient.  First, the class action predicated on the same "constitutional challenge" articulated in the first supplemental cause of action is defective and lacking in legal substance for all the reasons laid out *supra* in the discussion of the first supplemental cause of action.  Second, the claim based on the alleged use of incorrect maps by the DEC is barred for all the reasons discussed at many points *supra* in the context of Plaintiffs requests for declaratory judgments and other relief that would serve to vacate the state-court judgment or circumvent state court appellate procedure.

Additionally, to the extent that Plaintiffs attempt to state claims under § 1985 and RICO, these claims are entirely conclusory and unsupported by any facts on the record.  Rather than providing any substantive support for these claims in their Motion or in the body of their Proposed Supplemental Complaint, Plaintiffs appear to be seeking alternative vehicles to pursue claims that have been rejected elsewhere.  To the extent that these claims operate as yet another collateral attack on the state-court judgment relating to Plaintiffs' ongoing feud with the DEC, they are barred for the

reasons set forth *supra*.  To the extent that they relate to some broader allegations of judicial misfeasance by Judge Becker or some vast conspiracy by judges and official actors of the State of New York, the Court notes that Plaintiff has already litigated these issues in Bracci.  See generally 2013 WL 123810.  The Court, therefore, concludes that such claims are not properly brought again in this matter.  See Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."  (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976))).

Finally, as to the general addition of parties, the parties that Plaintiffs seek to add all relate only to these supplemental claims, all of which the Court finds to be futile or improperly brought. Additionally, as Defendants correctly note, many of these parties are immune from suit, as Plaintiffs should be well aware based on the decision in Bracci.  Therefore, Plaintiffs' Motion to supplement their Amended Complaint is denied in its entirety.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 7) to dismiss is **GRANTED in its entirety**; and it is further

**ORDERED**, that Plaintiffs' Amended Complaint (Dkt. No. 4) is **DISMISSED in its entirety**; and it is further

**ORDERED**, that Plaintiffs' Cross-Motion (Dkt. No. 14) to supplement their Amended Complaint (Dkt. No. 4) is **DENIED in its entirety**; and it is further

**ORDERED**, that if Plaintiffs wish to amend further their Amended Complaint (Dkt. No. 4)

and proceed with this action, they must do so **within thirty (30) days** from the date of filing of this

Memorandum-Decision and Order.  Consistent with this Memorandum-Decision and Order,

Plaintiffs may amend their Amended Complaint (Dkt. No. 4) **only** to re-plead their retaliation claim

against Defendant Grannis under 42 U.S.C. § 1983.  All other claims are **DISMISSED with**

**prejudice** consistent with this Memorandum-Decision and Order.  If Plaintiffs do not so amend

their Amended Complaint (Dkt. No. 4) in a timely fashion, however, this matter will be **dismissed**

**and judgment will be entered in favor of Defendants without further order of the Court**; and it

is further

  **ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties.

  **IT IS SO ORDERED**.


DATED:  March 21, 2013
    Albany, New York



_____
   Lawrence E. Kahn
   U.S. District Judge